UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JESUS JIMENEZ, individually and as Personal Representative of the ESTATE OF JESUS ANTONIO JIMENEZ, <br><br> Plaintiff, <br><br> v. <br><br> JEAN B. RAMEAU; JANE DOE RAMEAU; WILFRED JEAN; JANE DOE JEAN; GENERAL PARNTERS GROUP, INC.; ZERO MAX INC., <br><br> Defendants. | Case No. 3:24-cv-05139-TMC <br><br> ORDER GRANTING MOTION FOR SANCTIONS |

## I.    INTRODUCTION

This dispute arises out of a wrongful death action. Jesus A. Jimenez, a truck driver, was killed by Defendant Jean Rameau, another driver, as Rameau pulled out of a spot in a truck stop parking lot. Defendant Rameau pinned Jimenez between their two trucks, and, as he continued to move back, released and then ran over Jimenez. Jimenez died at the scene, and his estate brought a wrongful death suit against Defendant Rameau; his partner driver Defendant Wilfred Jean; their employer, Defendant General Partners Group, Inc. (GPG); and the trailer leasing company, Defendant Zero-Max, Inc.

Throughout the litigation, Defendants—all represented by the same counsel—have refused to fully comply with their discovery obligations. They have denied that they possess responsive documents, only for it later to be revealed that such documents did exist. They have disregarded requests to schedule depositions. And they have ignored this Court's discovery orders. Dkt. 44. While all of this was ongoing, Defendants moved for summary judgment on many of Plaintiff's claims. Dkt. 45. Defendants argued that Plaintiff could not show any issues of material fact, all while refusing to produce evidence that would raise such questions. Ultimately, Plaintiff moved for sanctions, explaining that Defendants had delayed and obstructed discovery at every possible turn. Dkt. 59.

The Court agrees. The Court GRANTS Plaintiff's motion for sanctions. Dkt. 59. The Court does not, however, grant Plaintiff default judgment on liability. Rather, the Court finds that under Federal Rule of Civil Procedure 37(b)(2)(A), the appropriate sanction is to find established that Defendants Rameau and Jean were acting as agents for both Defendants GPG and Zero-Max at the time of the incident. Zero-Max is prohibited from opposing Plaintiff's negligence claim on the grounds that Rameau and Jean were not agents of the company.

Further, under Rule 37(b)(2)(C), Defendants GPG and Zero Max are held jointly and severally liable for the reasonable expenses, including attorney's fees, caused by their failure to obey the Court's discovery order. Dkt. 44. Plaintiffs may file a fee petition within 14 days of this order.

## II.    FACTUAL BACKGROUND

This is a wrongful death suit arising out of a trucking accident that killed Jesus A. Jimenez. *See generally* Dkt. 60-10. On June 1, 2023, Jimenez, a truck driver, was standing next to the driver's side door of his tractor trailer in a truck stop parking lot. Dkt. 60-1 at 1, 5; Dkt. 60-10 at 5. Another tractor trailer, driven by Defendants Jean Rameau and Wilfred Jean,

was parked next to Jimenez's trailer. Dkt. 60-1 at 5; Dkt. 60-10 at 5–6. The two were a team who often drove together. Dkt. 60-2 at 5, 7. They would take turns driving while the other slept in the bed of the trailer, also known as a "sleeper truck." *See* Dkt. 58 ¶ 6. Rameau and Jean were employed by Defendant General Partners Group (GPG). Dkt. 60-2 at 6; Dkt. 58 ¶¶ 2–3. The trailer was subleased to Defendant GPG by Defendant Zero Max, Inc. Dkt. 60-3. Zero Max had itself leased the trailer from another company, Star Leasing, LLC. Dkt. 63 at 73; Dkt. 60-4. Star Leasing is not a named party. Dkt. 60-10 at 1.

While Jimenez was standing next to his trailer, Rameau began to move his own trailer out of its parking spot. Dkt. 60-1 at 5; Dkt. 60-10 at 5–6. As Rameau pulled out of the spot, his truck pinned Jimenez between the two vehicles. Dkt. 60-1 at 5; Dkt. 60-10 at 6. As Rameau moved back, Jimenez was released. Dkt. 60-1 at 5; Dkt. 60-10 at 6. He fell to the ground and was run over and killed by the trailer Rameau was pulling. Dkt. 60-1 at 5; Dkt. 60-10 at 6.

On November 17, 2023, Plaintiff Jesus Jimenez, both individually and as personal representative of the estate of Jesus Antonio Jimenez sued Defendants Jean Rameau, Wilfred Jean, GPG, and Zero Max, alleging 1) negligence of the drivers, 2) negligence of the companies, 3) negligent hiring, training, supervision, retention, and entrustment; and 4) vicarious liability under Washington state law. Dkt. 60-10 at 8–14. The case was originally filed in Pierce County Superior Court. Dkt. 60-10 at 1. But on February 22, 2024, Defendants removed Plaintiff's suit to this Court, alleging diversity jurisdiction. Dkt. 1; Dkt. 60-11.

Several months before filing the suit, on June 13, 2023, Plaintiff's counsel sent a preservation notice to Defendant GPG, informing the company that it must preserve all documents and relevant information related to the incident. *See generally* Dkt. 60-5. Plaintiff also sent a preservation letter to Star Leasing who forwarded the notice to Zero Max's insurer.

*See generally* Dkt. 60-7; *see also id.* at 19–21. On September 6, Plaintiff sent a similar preservation notice to Zero Max. Dkt. *See generally* 60-9.

On July 18, Defense counsel for GPG—who also represents the individual Defendant drivers and Defendant Zero Max—contacted Plaintiff's counsel to discuss what insurance policies were available. Dkt. 60-6 at 1. Defense counsel also offered Plaintiff the opportunity to inspect the trailer Defendant Rameau had driven. *Id.* Two days later, Plaintiff received a denial of coverage notice on behalf of Defendant Zero Max from the company's insurer. Dkt. 60-8.

On August 22, 2024, Plaintiff served initial requests for production and interrogatories on each Defendant. *See generally* Dkt. 60-12. A few weeks later, Plaintiff provided Defense counsel with a draft of two Rule 30(b)(6) notices for videotaped depositions for both GPG and Zero Max. *See generally* Dkt. 60-14. Plaintiff asked Defense counsel to provide any objections, as well as names of 30(b)(6) representatives and possible dates for the depositions. *Id.* By early October, Plaintiff still had not received a response. Dkt. 59 at 4.

Around the same time, Defendants produced what Plaintiff's counsel argues are non-substantive responses to Plaintiff's first set of interrogatories and requests for production. Dkt. 60-15; Dkt. 59 at 4. As of early November 2024, the only documents Defendants had sent to Plaintiff were insurance policies and general commercial policies; a leasing contract (the Trailer Interchange Agreement) between Defendants Zero Max and GPG; and photos taken by law enforcement agencies on the scene. Dkt. 59 at 4; Dkt. 60-15.

Plaintiff requested multiple times to depose the parties and their representatives. *See generally* Dkt. 60-13. Defense counsel evaded these requests for months. *See generally id.* On November 11, 2024, Plaintiff's counsel was finally able to depose Defendant Rameau. Dkt. 60-2. During the deposition, it became clear that Rameau possessed communications with GPG that had not been produced. Dkt. 60-2 at 7–10. The deposition was paused so that Rameau could

consult Defendants' counsel. *Id.* at 9. Defense counsel promised that Plaintiff's counsel would receive copies of the relevant communications. Dkt. 60 at 4–5. Plaintiff's counsel did not receive the documents before the November 26, 2024 discovery conference with the Court. *Id.*

Because of the delays caused by these breaks, and because Plaintiff did not want a repeat of this incident, Plaintiff's counsel had to reschedule the deposition of Defendant Jean. *See* Dkt. 52 at 5 ("On November 11, 2024, plaintiffs' counsel took an in person deposition of defendant, Jean Rameau, as Mr. Rameau requested a Haitian Creole interpreter be present. Defendant, Wilfred Jean's, deposition was scheduled to take place the same day after Mr. Rameau. During Mr. Rameau's deposition, he would refer to his cellphone to look up text messages, WhatsApp messages and Google spreadsheet documents to refresh his memory[.] . . . No new date for Wilfred Jean's deposition has been set as plaintiffs have been waiting for Mr. Jean to supplement his answers and responses to written discovery as we do not want the same incident that happened at Mr. Rameau's deposition to occur during Mr. Jean's deposition."). Defense counsel failed to ever provide Plaintiff's counsel with responses or a date and time for Jean's deposition. Dkt. 52 ¶ 13.

The parties then submitted a joint status report on their discovery disputes to the Court. Dkt. 41. Plaintiff's counsel requested that the Court enter an order compelling Defendants GPG and Zero Max to "provide substantive responses to Plaintiff's interrogatories and requests for production." *Id.* at 1. Plaintiff's counsel also asked the Court to compel GPG and Zero Max to provide representatives for 30(b)(6) depositions. *Id.* at 1–2. Defense counsel responded:

> Defendants request the opportunity to identify the written discovery to which it objects in responsive briefing when Plaintiff files a Motion to Compel and/or Defendant files a Motion for a Protective Order. Defendants ask that no order be entered at the discovery conference, as requested by Plaintiff.
>
> Defendants have otherwise answered all questions with as much information as is available and produced all documents currently within their possession, custody

or control, with the caveat that Defendant Zero Max anticipates producing supplemental responses to discovery within two weeks.

*Id.* at 2. At the hearing, the Court ordered Defense counsel to provide in writing the full name of its Rule 30(b)(6) designees with proposed deposition dates by Monday, December 2, 2024, and to supplement written discovery with verified responses within 14 days of the order. Dkt. 44.

Defendants did not provide supplemental responses or answers from Defendant Jean and Defendant GPG. Dkt. 59 at 5; Dkt. 60-13 at 1. Defendant Zero Max provided one document, an outbound inspection report, but nothing more. Dkt. 60-19.

Plaintiff continued to request to depose several witnesses: Nur Parpiev, Zero Max's owner and president; Richard Rosenbaum, Zero Max's safety manager; Mirsalih Mahkamov, GPG's owner and president, and John Acharya. Dkt. 59 at 5; Dkt. 60-13 at 1, 5, 8, 12. Despite multiple requests, Defense counsel never provided dates or times for the depositions to Plaintiff's counsel. *See* Dkt. 60-13 at 1, 5, 8, 12. Finally, after Plaintiff filed a statement with the Court requesting to seek sanctions, and after the Court granted Plaintiff leave to file this sanctions motion, Defendants provided dates for Parpiev and Rosenbaum. Dkt. 59 at 5. They still did not provide dates for Mahkamov and Acharya. *Id.*

Plaintiff claims that these "outstanding discovery requests go directly to the heart of plaintiffs' case[.]" Dkt. 59 at 6. Specifically, "that defendants, Jean Rameau and Wilfred Jean, were not only employees of GPG, but agents of Zero-Max, when they pulled a trailer leased to Zero-Max by Star Leasing, thereby making the defendants' joint and severally liable."

Plaintiff alleges that Zero-Max had a principal-agent relationship with Defendant drivers Rameau and Jean. Dkt. 60-10 at 5. Plaintiff explains, "The Master Agreement between Zero-Max and Star Leasing also expressly holds anyone Zero-Max uses to pull its' trailer will be considered an 'agent' of Zero-Max and that Zero-Max will make sure that individual(s) who

operate Star Leasing trailers will be "safe and careful drivers" and will be deemed to be under the 'direction and control' of Zero-Max.'" Dkt. 51 at 6. The agreement lays out: "Customer [Zero-Max] agrees that the trailer(s) will be operated by safe and careful drivers, properly licensed, properly qualified (U.S.D.O.T. requirements), at least 21 years of age, who will be deemed to be the Customer's [Zero-Max] agents under the Customer's [Zero-Max] direction and control." Dkt. 52-9 at 6. Plaintiff thus contends that "[a]nyone who operates a Star Leasing trailer leased to Zero-Max will be considered an 'agent' of Zero-Max. Anyone who operates a Star Leasing trailer leased to Zero-Max will be determined to be under Zero-Max's 'direction and control.' Anyone who operates a Star Leasing trailer leased to Zero-Max must be a 'safe and careful driver.'" Dkt. 51 at 6.

Amid these disputes, on December 20, Defendants moved for partial summary judgment—on the very issues at the heart of Plaintiff's "outstanding discovery requests." Dkt. 45 at 10–11; Dkt. 59 at 6. Except for certain claims against GPG that were mooted by GPG's concession that it was vicariously liable for Rameau's negligence, Plaintiff responded that there were, in fact, remaining questions of material fact. Dkt. 51 at 6, 22. But Plaintiff could not fully support his arguments because Defendants refused to produce the relevant evidence. *Id.* at 2; The Court agreed and denied the motion in an oral ruling on March 13, 2025. Dkt. 70; *see* Fed. R. Civ. P. 56(d)(1). In the same ruling, the Court dismissed the claims against GPG that were no longer at issue. Dkt. 70.

Plaintiff moved for sanctions on January 21, 2025. Dkt. 59. Plaintiff explains the "defendants have willfully and intentionally withheld documents and/or destroyed documents related to the June 1, 2023, wrongful death incident and willfully and intentionally violated the Court's November 26, 2024 discovery order. The only appropriate sanction is a default judgment on liability." *Id.* at 6. Defendants filed a response on February 5, Dkt. 62, to which Plaintiff

replied on February 11. Dkt. 65. The Court heard oral argument on March 13, 2025. The issue is ripe for the Court's consideration.

### III.    JURISDICTION

Before addressing each motion's merits, the Court must confirm that it has subject matter jurisdiction over the parties' claims. *See United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966–67 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments. . . ." and it generally has an obligation to establish subject matter jurisdiction "*sua sponte*, whether the parties raised the issue or not").

The Court has diversity jurisdiction over this action because the amount in controversy exceeds $75,000 and the opposing parties are citizens of different states. 28 U.S.C. § 1332(a). Defendants Jean Rameau and Wilfred Jean are citizens of the State of Florida. Dkt. 1 at 3. Defendant GPG is an Ohio corporation with its principal place of business in Ohio. *Id.* Defendant Zero Max is an Illinois corporation with its principal place of business in Illinois. *Id.* at 4. Plaintiff was a citizen of the State of Washington at the time of his death. *Id.* at 3. His estate is similarly a citizen of Washington. *Id.* The amount in controversy is also met. Based on the "undersigned attorneys' experience, knowledge of recent court decisions and jury verdicts, and other sources, claims of this nature are reasonably expected to exceed $75,000." *Id.* at 4. Plaintiff at one point made a settlement demand for $15,000,0000, "and found that Defendants limits were deemed to be insufficient to accept." *Id.* The diversity requirements are satisfied.

Accordingly, the Court applies federal procedural law and state substantive law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("The broad command of *Erie* was therefore identical to that of the Enabling Act: federal courts are to apply state substantive law and federal procedural law."). Discovery is "generally a matter of procedure within the power of the federal courts." 35A C.J.S. Federal Civil Procedure § 563. The Ninth Circuit has consistently applied federal

discovery rules in diversity cases, implicitly holding that the rules are procedural. *Retamco Operating, Inc. v. Carone*, 267 F. App'x 625, 627 (9th Cir. 2008) (applying federal discovery rules in diversity case); *Gubiensio-Ortiz v. Kanahele*, 857 F.2d 1245, 1255 (9th Cir. 1988), *cert. granted*, judgment vacated on other grounds sub nom. *United States v. Chavez-Sanchez*, 488 U.S. 1036, 109 (1989), and disapproved of on other grounds by *Mistretta v. United States*, 488 U.S. 361, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989) (comparing sentencing guidelines to discovery rules and other clearly procedural rules) ("These are substantive decisions, fundamentally different from those governing the time for filing responsive pleadings or the extent of allowable discovery."); *Diamond Claims & Investigation Servs., Inc. v. Farmers Ins. Exch.*, 849 F.2d 1475 (9th Cir. 1988) (unpublished) ("Farmers appeals from both the imposition of sanctions and the calculation of damages. As this is a diversity case, Oregon law applies to substantive questions and federal law to procedural ones, e.g., sanctions.") (citation omitted). Thus, though Plaintiff primarily cites state law throughout their briefing, *see generally* Dkt. 59 at 7–25, federal procedural law applies to these issues.

## IV.    LEGAL STANDARD

The Federal Rules equip this Court with a broad array of sanctions to punish and deter misconduct. See Fed. R. Civ. P. 37(b)(2)(A); *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). When a party fails to "obey an order to provide or permit discovery," this Court may impose sanctions including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]" Fed. R. Civ. P. 37(b)(2)(A). Rule 37 also provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses . . . caused by the failure[.]" Fed. R. Civ. P. 37(b)(2)(C). The party against whom an award of expenses is sought bears the burden of showing their "failure

was substantially justified" or that an award is otherwise "unjust." Fed. R. Civ. P. 37(b)(2)(C);

*Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983). Rule 37's twin

aims are "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to

deter those who might be tempted to such conduct in the absence of such a deterrent." *E.E.O.C.*

*v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 658 (W.D. Wash. 2012).

Parties can also seek sanctions related to the certification of discovery responses. Fed. R.

Civ. P. 26(g)(3); *Mills v. Zeichner*, No. C23-1130JLR, 2024 WL 37108, at *3 (W.D. Wash. Jan.

3, 2024). "[E]very discovery request, response, or objection must be signed by at least one

attorney of record." Fed. R. Civ. P. 26(g)(1). The attorney's signature certifies to the court that

the disclosure "is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A)–

(B). "If a certification violates this rule without substantial justification, the court . . . must

impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or

both." Fed. R. Civ. P. 26(g)(3). Like Rule 37, sanctions "may include an order to pay the

reasonable expenses . . . caused by the violation." *See id.* Rule 26 is "an objective standard that is

'heavily dependent on the circumstances of each case.'" *Mills v. Zeichner*, 2024 WL 37108, at

*4 (quoting Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment).

## V.    DISCUSSION

**A.    Defendants have repeatedly violated the Federal Rules and flouted the Court's orders.**

*1.    Defendants have obstructed discovery at every turn.*

"The purpose of discovery is to remove surprise from trial preparation so the parties can

obtain evidence necessary to evaluate and resolve their dispute." *Homesite Ins. Co. of the*

*Midwest v. Howell*, No. 2:21-CV-01389-JHC, 2022 WL 17601176, at *2 (W.D. Wash. Dec. 13,

2022) (quoting *United States v. Chapman Univ.*, 245 F.R.D. 646, 648 (C.D. Cal. 2007)). Rule 26

guides discovery. Rule 37 gives Rule 26 teeth, authorizing courts to sanction parties who violate the latter's parameters. *Goodman v. Staples the Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (explaining that Rule 37 "gives teeth" to Rule 26's disclosure guidelines) (citation omitted). Thus, the goal "of discovery sanctions . . . is to encourage counsel to comply with the rules." *Harris v. United States*, 132 F. App'x 183, 185 (9th Cir. 2005).

As Plaintiff has documented, Defendants have stonewalled Plaintiff throughout the course of discovery. To start, Defendants, refused to schedule depositions. *See generally* Dkt. 60-13. Plaintiff's counsel emailed Defense counsel on July 10, 2024, explaining that Plaintiff "intend[ed] to take 30(b)(6) depositions of GPG representatives and Zero-Max to address the hiring process of drivers/employees as to GPG and to address the process of the Trailer Interchange Agreement as to Zero-Max." *Id.* at 19. Plaintiff's counsel followed up on August 13, noting that they had not yet received any response. *Id.* at 18. Plaintiff requested a call to discuss the outstanding requests. *Id.* Defense counsel responded on August 16, providing availability for a call, but ignoring Plaintiff's other requests. *Id.* at 17.

After the call, Defense counsel emailed Plaintiff explaining that they were having trouble contacting anyone at GPG because, "to the best of [GPG's personal counsel's] knowledge, the company has gone belly up." *Id.* at 16. Defense counsel promised to "continue to follow up with all the contacts we have at" GPG and notify Plaintiff of any response. *Id.* But, Defense counsel cautioned, they didn't "anticipate being able to provide availability for a 30(b)(6) deposition." *Id.*

On September 24, Plaintiff's counsel again followed up with Defendants. Counsel explained, "we still have received no answers or responses to plaintiffs' written discovery from any defendant your firm represent[s], nor have we received dates for Wilfred Jean's deposition and the 30(b)(6) depositions of GPG and Zero-Max. . . . We will have no other choice but to file a motion to compel and will move forward with setting depositions of 30(b)(6) witnesses based

on our availability." *Id.* at 15. In another email on October 7, Plaintiff's counsel reiterated the outstanding request for 30(b)(6) representatives. *Id.* at 14. And on October 21, Plaintiff's counsel reached out to request to depose Henry Paucar, Nur Papiev, and Olimjon Ismailov from Zero-Max and Mirsalih Mahkamov from GPG. *Id.* at 12. Plaintiff asked Defense counsel to provide dates and times for these depositions, and, if the individuals were no longer employed with the companies, to provide permission for Plaintiff to contact them directly. *Id.*

Based on a rough transcript of a discovery hearing held on November 26, Defense counsel stated that a 30(b)(6) designee had been identified for each of the corporate Defendants (GPG and Zero Max). *See* Dkt. 44. Defense counsel assured the Court that there was no holdup in the depositions taking place, claiming that they had provided dates. *Id.* Plaintiff's counsel responded that the hearing was the first time she had heard of full names despite requesting them. *Id.* The Court then asked Defense counsel to provide the names, but they could only give the full name of the Zero Max deponent, Henry Paucar, not the GPG deponent, Moses. *Id.*

Plaintiff's counsel asked for Moses's full name, as well as for a time for the deposition. Dkt. 60-13 at 12; Dkt. 60-17 at 5. The deposition was scheduled, but Moses never appeared. Dkt. 60-17. In a statement for the record, Plaintiff's counsel explained, "plaintiffs have noted a 30(b)(6) deposition of General Partners Group representative whose name is - - only been provided as Moses with no last name, . . . Several weeks ago, we were informed that this date was a date that Moses and defense counsel had chosen as a date where he will be available to testify. . . . I reached out to defense counsel, Patrick Clifford, and I expressly asked him, do we need to continue with this deposition . . . because he had made comments at the court's hearing, which was on November 26th, that Mr. Moses was going to be available but wasn't sure if he was going to be the 30(b)(6) representative for" GPG. *Id.* at 5. Plaintiff's counsel was "told on December 2nd, Monday, that this deposition should go forward." *Id.* at 6.

On December 10, 2024, Plaintiff deposed Henry Paucar, Zero-Max's 30(b)(6) representative, for four and a half hours. Dkt. 62 at 4; Dkt. 60-21. But Mr. Paucar could not answer many of Plaintiff counsel's questions. *See, e.g.*, Dkt. 60-21 at 4–5, 7, 9.

Defendants otherwise continued to impede Plaintiff's ability to proceed with depositions. On December 18, Plaintiff emailed Defense counsel, explaining "this will be plaintiffs' fifth request for deposition dates and times for Nur Parpiev and Olimjon Ismailov from Zero-Max and Mirsalih Mahkamov from GPG and 2nd request for Richard Rosenbaum. We can arbitrarily note those depositions but don't want to waste our time, a court reporter and videographer's time and expense like we did for GPG's 30(b)(6) deposition when Moses failed to show up." Dkt. 60-13 at 10. Defendants' response was lackluster, making excuses for their failure to contact anyone at GPG and offering only limited depositions for Parpiev and Rosenbaum to "fill in any topics that need follow up from the Zero Max 30(b)(6) deposition." *Id.* at 5.

Plaintiff's counsel did manage to depose Defendant Rameau, but because of unexpected breaks and delays in the deposition caused by Rameau's failure to produce responsive documents, Plaintiff's counsel had to delay the same-day deposition of Defendant Jean. Dkt. 60-2 at 7–10.

Failing to appear for or schedule a deposition is sanctionable conduct under Rule 37. *See Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1223 (9th Cir. 2018) (citing cases). Defendants argue that they did, eventually, schedule some of these depositions. But the Ninth Circuit has continuously rejected the argument that failure to timely comply with the discovery rules can be cured by later compliance. *See, e.g.*, *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir.1986) (citation omitted) ("Belated compliance with discovery orders does not preclude the imposition of sanctions."); *G–K Properties v. Redevelopment Agency of San*

*Jose*, 577 F.2d 645, 647–48 (9th Cir.1978) ("last minute tender" of discovery does not cure harm of misconduct).

And the stonewalling goes beyond just depositions. Defendants have repeatedly claimed in responses to requests for production and interrogatories that they "do not possess responsive information"—both in situations when this is obviously untrue and on occasions where it has actually been proven false. Dkt. 62 at 6; *see also id.* at 6–7 ("If nothing has been provided, it is because there is nothing in the Defendants' possession, custody, or control responsive to that request.").

For example, Defendants claim that they did not possess responsive documents or information on how GPG's drivers were trained, Dkt. 60-15 at 8, or compensated, *id.* at 8–9; whether the truck was outfitted with a GPS, *id.* at 15; and where the trailer was picked up and what the trailer was transporting, *id.* at 48, 59–60. Defendant Zero Max claims that it lacks any responsive documents on the damage to its trailer, *id.* at 46; has no communications with GPG about the accident, Dkt. 63, Dkt. 60-19 at 10; and does not have policies on the leasing of its trailers, Dkt. 63 at 59.

Rule 26 requires that parties respond fully to interrogatories and requests for production. "An answer to an interrogatory is sufficient if the answer as a whole discloses a conscientious endeavor to understand the question and to answer it fully." *Colony Ins. Co. v. Kuehn*, No. 2:10-CV-01943-KJD, 2011 WL 4402738, at *4 (D. Nev. Sept. 20, 2011) (citing *Parrott v. Wilson*, 707 F.2d 1262, 1273 n.26 (11th Cir. 1983)). "A party is generally charged with knowledge of what its agents know, or what is in records available to it, or even information others have given to it on which it intends to rely in its suit." *Id.* (citations omitted). Consequently, a "party cannot limit its interrogatory answers to matters within its own knowledge and ignore information immediately available to it or under its control." *Id.* (citations omitted).

Rule 36 thus requires that the "responding party [] make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control and to state fully those efforts." *Id.* at *8 (quoting *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981)). A reasonable inquiry "includes an investigation and inquiry of employees, agents, and others, 'who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.'" *Id.* (quoting *Asea*, 669 F.2d at 1245). And a reasonable inquiry "may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties. . . . The operative words then are 'reasonable' and 'due diligence.'" *Id.* (quoting *Asea*, 669 F.2d at 1245).

Defendants should possess basic information or business records about employee compensation, work details, and the truck and trailer involved in the accident. There is no evidence Defendants have tried to conduct a reasonable inquiry, and they do not certify that their responses did so. *See, e.g.*, *id.* ("Defendant provides no details as to why it does not have 'enough information' to admit or deny the requests. Defendant has also failed to certify in its responses that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny the requests."). These responses cannot satisfy the requirements for answers to interrogatories and requests for production.

The lack of reasonable inquiry is obvious given what happened during Defendant Rameau's' deposition. *See* Dkt. 60-2 at 7–10. In its responses to interrogatories, Defendant GPG, Rameau's employer, claimed that there were no communications between them that could be produced. Dkt 60-15 at 13–14. But at Rameau's deposition, it became evident this was untrue. Dkt. 60-2 at 7–10. Plaintiff's Counsel asked Mr. Rameau a question about the parking lot location, and he took his phone out to check it. *Id.* at 7. He then handed his phone to an

interpreter present to assist with the deposition, who gave the phone to Defendants' attorney. *Id.*
Plaintiff's counsel noticed that Rameau had opened a text chain. *Id.* Plaintiff's counsel clarified:

> Q. So you have text messages through the WhatsApp· program involving General Partners Group?
>
> A. Yes. There's the address. When you asked for the address, I know the street, but I don't remember the name of the building, that's why I have to check it.
>
> Q. I understand that. My question is, if you have text messages involving General Partners Group, why have you not produced these text messages to the attorney for General Partners Group?
>
> Mr. Clifford: And I'm going to butt in there just to the extent that that's calling for privileged information. Can we change the question a little bit?
>
> Q. So my -- you have some text messages through WhatsApp involving General Partners Group specifically to my question of the address of where the training took place; correct?
>
> A. It's not just a parking lot, it's a office space where General Partners is located. They also have a parking lot, that's what I said, parking lot.
>
> MR. CLIFFORD:· Can I interrupt?
>
> MS. LIM: Well, you can. Let me finish this line of questioning.
>
> Q. In this lawsuit we have requested through the attorneys for General Partners Group, which they also represent you, of all communications involving your employment with General Partners Group and the incident involving our client on June 1, 2023. Today is the first day that we are just find -- we, meaning the plaintiff's attorneys, and the plaintiff[]s are just finding out that you have electronic communications involving General Partners Group still on your phone and to a certain extent it may or may not involve anything dealing with June 1, 2023. So we're a little bit surprised to find out that you have this information specifically since you're able to pull up where the address you're supposed to go to for the initial training that has not ever been produced.

Dkt. 60-2 at 7–9. After a brief break, the parties returned. *Id.* at 9. The parties clarified
that Rameau possessed texts and WhatsApp messages with his co-Defendants and emails
about his initial hiring and compensation with GPG. *Id.* at 10. Defendants promised to
produce the documents. At oral argument, Plaintiff indicated that they had only produced
"some."

ORDER GRANTING MOTION FOR SANCTIONS - 16

But Defendants have a responsibility to supplement their answers and provide these documents "in a timely manner." *Harris v. JFC Int'l Inc*., No. 21-CV-01536-LK, 2023 WL 3818463, at *6 (W.D. Wash. June 5, 2023). A party that has responded to an interrogatory or request for production "must supplement or correct its disclosure or response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect," so long as the "additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" *Id.* (quoting Fed. R. Civ. P. 26(e)(1)(A)). If a party fails to do so, they must show that their delayed disclosure was either substantially justified or harmless to avoid sanctions. *Id.* at *7 (citing *R&R Sails, Inc. v. Ins. Co. of Pa*., 673 F.3d 1240, 1246 (9th Cir. 2012)).

Defendants have not done so here. They simply state that "[i]f and when additional information has become available through the course of litigation, that information has been provided to Plaintiffs." Dkt. 62 at 7. And Defendants try to pin the onus for their failures on Plaintiff. For example, Defendants argue that it is Plaintiff's fault that the deposition for Defendant Jean was never rescheduled. *Id.* at 3–4 ("On November 11, 2024, Plaintiffs deposed Defendant Rameau in person in Florida for approximately seven hours. Though Defendant Jean was available the same day, Plaintiffs decided to continue deposing Defendant Rameau and have yet to reset his deposition for another day."). But the reason that Plaintiff ran out of time to depose Defendant Jean is Defendants' failure to respond to written discovery. *See* Dkt. 60-15 at 13–14; Dkt. 51 at 7–8. Plaintiff was forced to break several times for Defendant Rameau to speak with his counsel when it was revealed that responsive documents had not been produced. Dkt. 51 at 7–8. Consequently, the deposition took much longer than originally planned. This was not Plaintiff's fault.

All of the above is sanctionable conduct. "The record is clear and undisputed that [Defendants] repeatedly flouted even [their] basic discovery obligations, often violating court orders." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). Defendants "fail[ure] to conduct a reasonable (or any) search" of their documents is sanctionable under Rule 37(c). *Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 466 (D. Ariz. 2020), *aff'd*, No. 20-17210, 2022 WL 259937 (9th Cir. Jan. 27, 2022). As is their failure to "timely supplement" responses. *Id.*

Even where Defendants ultimately did produce some responsive documents, such "[b]elated compliance with discovery orders does not preclude the imposition of sanctions." *Combs*, 285 F.3d at 906 (citations omitted). "Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *Id.* (citing *G–K Props.*, 577 F.2d at 647–48).

2.    *Plaintiff seeks appropriate discovery about Zero Max's possible liability.*

Defendants also argue that they have ignored Plaintiff's discovery requests because they do not believe that the information Plaintiff seeks is relevant. *See* Dkt. 60-13 at 2 ("Since liability [for GPG and Rameau] has been admitted, many of these requests are moot."); Dkt. 62 at 7–8 ("Certainly, the email shows Defendants' frustration with Plaintiffs' continued false allegations of incomplete discovery and Defendants' belief that a determination regarding liability will likely focus the remaining discovery. . . . Plaintiffs argue nonexistent discovery will somehow prove Defendants Rameau and Jean were agents of ZM. Despite Defendant Rameau's and ZM's testimony, Defendant Rameau's employment file, and the Trailer Interchange Agreement showing otherwise, Plaintiffs continue to harass Defendants for information which simply does not exist.").

Much of the requested information goes to the relationship between Zero Max and GPG. Dkt. 59 at 14 ("Without these documents plaintiffs are prejudiced in their preparation for trial

1    and presentation of defendant Zero-Max's agency relationship with individual defendants, Jean

2    Rameau and Wilfred Jean."). Plaintiff seeks to show that Zero-Max and GPG's contractual

3    relationship included a principal-agent relationship between Zero-Max and the drivers, Rameau

4    and Jean, or a duty for Zero-Max to exercise reasonable care to see that the drivers of its trailers

5    were careful and safe. *Id.*; *see also* Dkt. 60-10 at 5. Such a relationship could impose liability on

6    Zero-Max for the drivers' actions. Dkt. 60-10 at 5.

7           To support this claim, Plaintiff points to a contract between Zero-Max and Star Leasing.

8    Dkt. 51 at 6. In opposition to Defendants' motion for summary judgment, Plaintiff explains:

9    "The Master Agreement between Zero-Max and Star Leasing also expressly holds anyone Zero-

10   Max uses to pull its' trailer will be considered an 'agent' of Zero-Max and that Zero-Max will

11   make sure that individual(s) who operate Star Leasing trailers will be 'safe and careful drivers'

12   and will be deemed to be under the 'direction and control' of Zero-Max." *Id.* (quoting Dkt. 52-9

13   at 6). Thus, Plaintiff concludes, "Between May 13, 2023 and June 1, 2023, defendants, Jean

14   Rameau and Wilfred Jean, were pulling a trailer owned by Star Leasing that was leased to Zero-

15   Max. Under the Master Agreement, regardless of who is pulling Star Leasing's trailer, that driver

16   is an agent of Zero-Max. As agents of Zero-Max, Mr. Rameau and Mr. Jean were under the

17   control and direction of Zero-Max." *Id.* at 7 (citations omitted).

18          GPG also asserted affirmative defenses suggesting someone else could be liable, or that it

19   was entitled to indemnification from other parties, which is another reason Plaintiff is entitled to

20   seek discovery from potentially liable third parties such as Zero-Max. *See* Dkt. 60-15 at 36–37.

21   Zero-Max did the same. *Id.* at 63–65. In other words, both GPG and Zero-Max—while

22   represented by the same attorneys—asserted that potential third parties (such as each other)

23   could be liable, while simultaneously refusing to respond to discovery on the relationship

24   between the various corporate entities.

Plaintiff thus has a good-faith basis for claiming that Zero Max may be liable alongside GPG, and for believing that the two entities are connected. The general scope of discovery is defined: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Here, information relevant to the relationship between Zero-Max, GPG, and the drivers falls squarely within this broad definition. The evidence would show the existence, or lack thereof, an agency relationship between the parties, defining Zero-Max's liability. Thus, the Court concludes, Defendants' objections to the discovery of such evidence are unfounded and intended only to delay and obscure the truth.

 3. *Defendants' objections lack basis in the Federal Rules.*

Defendants have also continually objected to Plaintiff's written discovery requests on the basis that information or documents are not "reasonably calculated to lead to the discovery of admissible evidence." *See, e.g.*, Dkt. 60-15 at 74, 84, 86–88, 104. Not only is this often untrue, but "reasonably calculated to lead to the discovery of admissible evidence" has not been the standard under Rule 26 for nearly a decade.

In 2015, the Advisory Committee on the Federal Rules of Civil Procedure amended Rule 26 to remove the phrase. Before the 2015 Amendments, discoverable evidence had to either be admissible at trial or reasonably calculated to lead to the discovery of admissible evidence. *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563 (D. Ariz. 2016). "Some courts—and many lawyers—used this language to define the scope of discovery." *Id.* (citing *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.2005)). But in 2015, the Advisory Committee eliminated the phrase and replaced it "with more direct declaration of the phrase's original intent: 'Information within this scope of discovery need not be admissible in evidence to be discoverable.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). The Advisory Committee explained:

The former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery." The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision . . . ." The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments. It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable." Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.

Fed. R. Civ. P. 26 Adv. Comm. 2015. Parties may obtain discovery on any non-privileged matter relevant to any party's claim or defense that is proportional to the needs of the case, including information that may be inadmissible at trial. Fed. R. Civ. P. 26(b)(1).

Thus, not only are Defendants objections inappropriate—given that the information Plaintiff seeks is relevant—they also lack any basis in controlling law.

4.    *Defendants repeatedly failed to comply with the Court's discovery order while also moving for summary judgment on related claims.*

Next, Defendants have not complied with this Court's discovery order. Dkt. 44. Rule 37(b) allows for sanctions for not obeying a discovery order. *Tucker v. BMW of N. Am., LLC*, No. C20-5050 BHS, 2022 WL 800902, at *1 (W.D. Wash. Feb. 7, 2022) (citing Fed. R. Civ. P. 37(b)(2)). "It is well established in the Ninth Circuit that this rule 'provides a wide range of sanctions for a party's failure to comply with court discovery orders.'" *Id.* (quoting *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980)).

On November 26, 2024, the Court ordered Defendants to provide in writing the full name and information of designated representatives with proposed deposition dates by December 2, and to supplement written discovery signed by designated representatives within 14 days of the order. Dkt. 44. Defendants did no such thing. They continued to insist that certain requests were

moot. Dkt. 60-13 at 2. And, despite multiple clear requests from Plaintiff, they refused to answer outstanding document requests and interrogatories through January. *Id.* Even though Plaintiff had identified in its motion to compel what responses were insufficient, on January 15, 2025, Defendants requested that Plaintiff's counsel provide "specific interrogatories and requests for production[.]" Dkt. 60-13 at 2. And they stated that the remainder could be "best resolved by the Court through the pending" motion for summary judgment. *Id.*

While violating the Court's order, Defendants sought summary judgment claiming that Plaintiff lacked evidence—on the very issues for which it has refused to provide necessary documents or information. Dkt. 45. "An important purpose of discovery is to reveal what evidence the opposing party has, thereby helping determine which facts are undisputed—perhaps paving the way for a summary judgment motion—and which facts must be resolved at trial." *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1117 (9th Cir. 2004). Summary judgment cannot resolve a discovery dispute. And summary judgment cannot be granted based on a party's contention that there is no question of material fact when that party refuses to provide the necessary facts.

**B.      Sanctions are appropriate under Rule 37.**

As explained above, the record "amply supports sanctions." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). "It is well established in the Ninth Circuit that [Rule 37(b)(2)] 'provides a wide range of sanctions for a party's failure to comply with court discovery orders.'" *Tucker*, 2022 WL 800902, at *1 (quoting *Sumitomo Marine & Fire Ins. Co.*, 617 F.2d at 1369); *see also Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir. 1997) ("The scope of sanctions for failure to comply with a discovery order is committed to the sound discretion of the district court.").

"Federal Rule of Civil Procedure 1 requires that the rules be construed to secure the 'just' resolution of disputes." *New Images*, 482 F.3d at 1097. As the Ninth Circuit has explained, "[t]here is no point to a lawsuit, if it merely applies law to lies." *Id.* Thus, they have long held that "the most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Id.*

The main area of dispute in this case, that plaintiffs have tried diligently to explore, is whether Rameau and Jean were agents of Zero Max as well as GPG. And at every turn, both corporate defendants—represented by the same lawyers—have stonewalled, while simultaneously asserting affirmative defenses that other entities (such as each other) share liability or are responsible for contribution or indemnification. This is an abuse of the discovery process, and the evidentiary sanctions available under Rule 37 are meant to address precisely this type of situation, in which a party attempts to prevent discovery into a key issue in the case.

Plaintiff requests that the Court grant default judgment on liability. Dkt. 59 at 1-2, 8–9. Though there is a multifactor test for determining whether this is an appropriate remedy, *see, e.g.*, *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012), Plaintiff did not argue that this test applies or is satisfied. Rather, Plaintiff relied entirely on state law. *See generally* Dkt. 59. As discussed above, federal procedural law applies to both discovery and sanctions. *See, supra*, Sec. III.

Even if Plaintiff had addressed the correct standard, before ordering case dispositive sanctions, the Court would need to consider narrower sanctions. *Curtis v. Illumination Arts, Inc.*, No. C12-0991JLR, 2013 WL 6173799, at *17 (W.D. Wash. Nov. 21, 2013) ("The fifth factor— the availability of less drastic sanctions—has three subparts: 'whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the

possibility of case-dispositive sanctions.'") (citing *New Images*, 482 F.3d at 1096). The Court

has not yet considered or tried lesser sanctions. The Court's previous discovery order—to

provide the full name and information for designated representatives with proposed deposition

dates and to supplement written discovery—is hardly a sanction. Dkt. 44; *cf. Curtis*, 2013 WL

6173799, at *17 ("The court has both considered and tried lesser sanctions on two occasions to

encourage Defendants' compliance with discovery rules and the court's discovery orders. On

February 20, 2013, the court ordered Defendants to respond without objection to Plaintiffs'

discovery requests and imposed monetary sanctions against Defendants for their failure to

respond to Plaintiffs' discovery requests. . . . On March 19, 2013, the court specified that

Defendants and Defendants' counsel should pay Plaintiffs $5,594.00 in attorney's fees and costs

within 14 days of the date of the order.").

Thus, the Court will not grant default judgment right now. Rather, the Court orders more

targeted sanctions, tailored to the remaining issues in the case and the exact misconduct at play.

Rule 37(b)(2)(A)(i) allows the Court to direct that "designated facts be taken as established for

purposes of the action, as the prevailing party claims." Rule 37(b)(2)(A)(ii) allows the Court to

"prohibit the disobedient party from supporting or opposing designated claims or defenses."

Here, as a sanction for Defendants' serious and prolonged discovery misconduct, it is deemed

established that Rameau and Jean were acting as agents for both companies, and GPG and Zero

Max are prohibited from opposing that claim. *See* Dkt. 60-10 at 5. The Court recognizes that, as

a practical matter, this might function as a dispositive sanction on vicarious liability if Zero Max

does not contest the drivers' negligence; GPG has already admitted liability. But the Court finds

that this is warranted given Defendants' concerted efforts throughout the discovery period to

prevent Plaintiff from developing evidence on this key question.

ORDER GRANTING MOTION FOR SANCTIONS - 24

Additionally, GPG and Zero Max are declared jointly and severally liable for the reasonable expenses, including attorney's fees, caused by the failure to obey the court's orders following the November 2024 discovery conference. Fed. R. Civ. P. 37(b)(2)(C). Plaintiff may file a fee petition within 14 days of this order.

## VI.    CONCLUSION

For these reasons, the motion for sanctions (Dkt. 59) is GRANTED as set forth above. Plaintiff may file a fee petition within 14 days of this order.

At oral argument, the Court inquired as to what discovery would need to be completed given the Court's decision on both the motion for summary judgment and the motion for sanctions. Plaintiff's counsel responded that they still needed to complete the deposition of Defendant Jean Rameau and needed to conduct a deposition of Wilfred Jean. Plaintiff also explained that Wilfred Jean had still failed to produce any documents in response to their requests for production. The Court orders the parties to complete this discovery by the new discovery deadline, which will be set in a separate order adjusting the case schedule.

Dated this 13th day of March, 2025.

Tiffany M. Cartwright
United States District Judge